UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-8752-BER

UNITED STATES OF AMERICA

v.

ERIK RAFAEL OQUENDO LOPEZ,

                     **Defendant.**      /

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  ☐ Yes  ☑ No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  ☐ Yes  ☑ No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  ☐ Yes  ☑ No

4. 4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  ☐ Yes  ☑ No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

BY: *Juan A. Albino*
JUAN ALBINO
ASSISTANT UNITED STATES ATTORNEY
District Court No.   A5503412
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:    (561) 820-8711
Fax:    (561) 820-8777
Email:  Juan.Albino@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
| --- | --- | --- |
| v. | ) | |
| | ) | Case No. 25-8752-BER |
| ERIK RAFAEL OQUENDO LOPEZ, | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

FILED BY ___TM___ D.C.
Dec 15, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  10/09/2025 - 12/03/2025  in the county of  Palm Beach  in the Southern District of  Florida , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. § 841(a)(1) | Distribution, manufacturing, possession with intent to distribute of a controlled substance. |
| 18 U.S.C. § 924(c) | Use, carry, possess a firearm during and in relation to a drug trafficking offense or crime of violence. |
| 21 U.S.C. § 843 | Unlawful use of a two way communication facility. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Brittany DiStefano*
Complainant's signature

Brittany DiStefano, ATF Special Agent
*Printed name and title*

Sworn to and attested to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P.4 (d) and 4.1.

Date:

Digitally signed by Bruce Reinhart
Date: 2025.12.15 14:48:56 -05'00'
*Judge's signature*

City and state:  West Palm Beach, FL   Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, ATF Special Agent Brittany DiStefano, being first duly sworn, does hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     Your affiant is currently a Special Agent (S/A) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and has served in that capacity since August 2021. Your affiant is currently assigned to the ATF Ft. Pierce Office in the Miami Field Division. As a Special Agent, your affiant has attended the Federal Law Enforcement Training Center where she has completed both the Criminal Investigator Training Program and ATF Special Agent Basic Training program. Your affiant's responsibilities as a Special Agent include, among other things, conducting investigations into criminal violations of federal law, including violations of Title 18 and Title 21 of the United States Code. Your affiant is thus a "federal law enforcement officer" as defined by Fed. R. Crim. P. 41(a)(2)(C). As a Special Agent with ATF, your affiant has participated in investigations into a variety of federal crimes, including but not limited to violations of federal firearms laws and narcotics statutes. Prior to your affiant's employment as an ATF agent, I was a duly sworn Deputy Sheriff with the Palm Beach County Sheriff's Office for approximately seven years. As a Deputy Sheriff, your affiant was tasked with conducting investigations and arrests for various types of criminal offenses including serious violent crimes, narcotics offenses, and other general property crimes. During your affiant's tenure as a Deputy Sheriff, I was temporarily assigned to the Narcotics Unit and participated in approximately twenty investigations involving undercover purchases of illegal substances from drug traffickers, executing numerous drug-related search warrants resulting in the successful discovery of narcotics and other contraband, interdiction of narcotics via mail carriers, and utilizing confidential informants. As a

result of your affiant's training and experience, I have become very familiar with the ways, manners, and means by which drug traffickers and users conduct their illegal activities in the South Florida region. Your Affiant is familiar with the packaging, distribution techniques, and street terminology associated with controlled substances, as well as the habits of street level drug dealers. The use of a tracking device will allow your affiant to identify the criminal network of the suspect such as the source of the controlled substance, drug dealers and buyers of the controlled substance, and other criminal associates involved in the drug conspiracy.

2. This affidavit is made in support of a criminal complaint charging defendant Erick Rafael OQUENDO LOPEZ ("**OQUENDO**") with (1) Title 21 U.S.C. 841 (a)(1) Distribution/Manufacturing/Possession with intent to Distribute (2) Title 18 U.S.C. 924(c) Use/Carry/ Possess a Firearm During and In Relation to a Drug Trafficking Offense or Crime of Violence and (3) Title 21 U.S.C. 843 Unlawful Use of a Two Way Communication Facility. The information contained in this affidavit is based in part on information developed by ATF Special Agents, information obtained from other law enforcement personnel, information obtained from a confidential informant ("CI"), who has proven to be reliable, and a review of various law enforcement databases. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the criminal complaint, it does not include all facts known to me or to other law enforcement officers regarding this investigation.

**PROBABLE CAUSE**

3. On or about September 17, 2025, ATF Special Agent (S/A) Brittany DiStefano received information from a reliable ATF confidential informant (CI) regarding a suspect identified as Erick Rafael OQUENDO LOPEZ (hereinafter "OQUENDO") who was reportedly selling ounces of cocaine and offering multiple types of firearms for sale, including a .50 caliber

rifle. Via text communications, OQUENDO sent the CI several photos of firearms available for purchase from phone number (407) 777-1922 (hereinafter "PHONE NUMBER") which is associated with OQUENDO.

4. Beginning on or about September 22, 2025, law enforcement, using a Homeland Security Investigation (HSI) undercover (UC) agent, contacted OQUENDO through the PHONE NUMBER on WhatsApp, to arrange the purchase of cocaine from OQUENDO.

5. On or about October 9, 2025, ATF and HSI Special Agents conducted a joint undercover operation to buy two (2) ounces of cocaine from OQUENDO. At around 4:30 PM, the CI called OQUENDO on his PHONE NUMBER to confirm the transaction. OQUENDO confirmed the cocaine was ready and provided a meeting location. Shortly after, the UC and CI drove to the designated apartment complex while agents conducted surveillance.

6. At approximately 4:50 PM, OQUENDO exited from his vehicle, a white 2020 Infiniti Q50 sedan bearing Florida Tag #L2PRA and entered the rear driver side of the UC vehicle. OQUENDO handed the UC a red and white Equate Rolled Gauze box that contained a vacuum sealed bag with two smaller clear plastic bags which, in turn, contained a white powdery substance. The UC gave OQUENDO $1900 dollars of ATF Funds for the cocaine. Your affiant later field tested the white powdery substance in the two plastic bags and received a positive result for cocaine. The cocaine was weighed and had a total package weight of 57.82 grams.

7. After the deal, OQUENDO followed the UC and CI in his white Infiniti vehicle as they left the area. A records check revealed OQUENDO was the registered owner of the white Infiniti Q50 sedan.

8.      On or about October 15, 2025, agents conducted another joint undercover purchase for two (2) more ounces of cocaine from OQUENDO. At approximately 11:37 AM, OQUENDO sent the same meeting location as before from his PHONE NUMBER. The UC drove to the apartment complex, where OQUENDO exited the white Infiniti Q50 sedan carrying a brown paper bag. OQUENDO entered the front passenger seat of the unmarked UC vehicle and handed over the brown paper bag to the UC, which contained a vacuum sealed package with a smaller clear Ziploc bag filled with a shiny white powdery substance. During the transaction, OQUENDO stated he worked for the Jalisco Cartel out of Mexico and received the cocaine in the specific vacuum sealed packaging. Based on training and experience, your affiant knows vacuum sealing is commonly used by drug traffickers to reduce the odor of drugs and escape detection, to conceal larger quantities by compressing the drug product and removing residual air, and to hide the product in unsuspecting containers during transportation.

9.      The UC exchanged $1900 dollars of ATF Funds for the cocaine, which later field tested positive for cocaine, weighing 56.41 grams. OQUENDO then left in the white Infiniti sedan.

10.     On Friday, November 14, 2025, ATF Special Agents (S/As) and HSI Special Agents (S/As) conducted a joint undercover (U/C) operation to meet with target, Erick OQUENDO LOPEZ, and purchase four (4) ounces of cocaine. The UC arranged the purchase through WhatsApp communications, both text and phone calls, with OQUENDO via the PHONE NUMBER to meet at the same deal location. Palm Beach Sheriff's Office (PBSO) Aviation was launched to provide aerial surveillance of the transaction.

11.     At approximately 11:30 AM, PBSO Aviation advised that a male wearing a black shirt and blue jeans, identified as OQUENDO, exited from 2587 Hayden Drive, Lake Worth, Florida. OQUENDO was observed carrying a white cereal box in his hand as he exited from the

front door of the residence and walked to a white Infiniti sedan parked in front of the residence. OQUENDO then opened the trunk of the Infiniti and placed the cereal box inside the trunk. OQUENDO closed the trunk of the Infiniti and entered the driver side of the vehicle. The Infiniti then began to leave the driveway of the residence and travel south on Hayden Drive. PBSO Aviation maintained a visual on the white Infiniti sedan as the driver turned onto 10th Avenue N and proceeded toward the direction of apartment complex. At approximately 11:34 AM, the target arrived at the deal location and pulled into a parking spot in front of the apartment complex. PBSO Aviation then witnessed OQUENDO exit and open the trunk of the vehicle to grab the cereal box. OQUENDO, in possession of the cereal box, then re-entered the driver side of the vehicle.

12. At approximately 11:30 AM, the UC agent utilizing an undercover vehicle, proceeded to the apartment complex after positive contact via WhatsApp messaging with OQUENDO.

13. At approximately 11:37 AM, the UC agent arrived at the location and parked in the apartment complex parking lot. Shortly after, OQUENDO was observed exiting from the same White Infiniti Q50 sedan with the white cereal box in his hand. OQUENDO entered the front passenger seat of the unmarked UC vehicle and passed the cereal box to the UC. The white cereal box, identified as a Cinnamon Toast Crunch cereal brand, was found to contain a vacuum sealed bag filled with a shiny white powdery substance. In exchange for the four (4) ounces of cocaine, the UC agent supplied OQUENDO with $4000 dollars of ATF Investigative Funds. Field test was positive for cocaine; total package weighed 122.91 grams

14. The UC proposed interest in purchasing a firearm from OQUENDO. OQUENDO began to scroll through his cellphone and showed the UC agent a WhatsApp message chat that

contained a photo of a black AR-15 style rifle. OQUENDO then notified the UC that he would contact his firearm source shortly after the deal and attempt to get the firearm to sell to the UC agent.

15. After the narcotics transaction was completed, OQUENDO exited from the UC vehicle. OQUENDO then entered the driver side of his white Infiniti Q50 sedan while the UC departed from the deal location.

16. On Wednesday, December 3, 2025, ATF Special Agents (S/As) and HSI Special Agents (S/As) conducted a joint undercover (U/C) operation to meet with target, Erick OQUENDO LOPEZ, and purchase two (2) ounces of cocaine and a Glock model 17 pistol with a red dot optic attached to the slide. PBSO Aviation was launched to provide aerial surveillance of the transaction.

17. Two days prior, the CI received three photos from OQUENDO via WhatsApp that depicted a Glock handgun displayed in the hand of a male with a black tattoo positioned on their right lower forearm. The male was wearing red shorts with the word "MARVEL" written all over the front. The Glock model 17 handgun was equipped with a red dot optic on the slide. OQUENDO advised the CI that the gun was for sale and to notify the UC if he wished to purchase the firearm. The UC communicated to OQUENDO in the messaging application WhatsApp that he would purchase the firearm and two (2) ounces of cocaine from OQUENDO on December 3, 2025. (See below photos of Glock firearm).



18.     On December 3, 2025, at approximately 11:42 AM, PBSO Aviation advised over the radio that a white Infiniti Q50 backed into a parking space in front of 2587 Hayden Drive. A male wearing a black shirt and blue shorts, identified as OQUENDO, exited from the vehicle and walked into the 2587 Hayden Drive. Shortly after, OQUENDO was observed carrying a red backpack over his shoulder as he exited from the front door of the residence and walked to the trunk of the white Infiniti Q50. OQUENDO then opened the trunk of the white Infiniti Q50 sedan and placed the red backpack inside the trunk. OQUENDO closed the trunk of the white Infiniti and entered the driver side of the vehicle. The vehicle then began to leave the driveway of the residence and travel south on Hayden Drive. PBSO Aviation maintained a visual on the target vehicle as the driver turned onto 10th Avenue N and proceeded toward the direction of the apartment complex.

19.     At approximately 11:47 AM, OQUENDO arrived at the deal location and backed into a parking spot in front of the apartment complex. Shortly after, PBSO Aviation then witnessed OQUENDO exit the driver side and open the trunk of the white vehicle to grab the red backpack. OQUENDO, in possession of the red backpack, then re-entered the driver side of the vehicle.

20. At approximately 11:51 AM, the UC arrived at the location and parked in the apartment complex parking lot next to OQUENDO's white Infiniti sedan. OQUENDO was then observed exiting from the same White Infiniti sedan with the red backpack in his hand. OQUENDO entered the front passenger seat of the unmarked UC and opened the red backpack. OQUENDO removed a clear sealed bag from the backpack and handed the clear bag to the UC. The clear sealed bag contained both the two (2) ounces of cocaine and the Glock model 17 firearm inside. In exchange for the two (2) ounces of cocaine and the Glock firearm, the UC supplied OQUENDO with $3200 dollars of ATF Investigative Funds. The two ounces of cocaine later field tested positive for cocaine and weighed 58.95 grams.

21. After the transaction was completed, OQUENDO entered the driver side of the white Infiniti sedan while the UC departed from the deal location.

22. S/A DiStefano inspected the Glock model 17 firearm equipped with an RMR optic bearing serial number# PBSO1680. According to the UC agent, he confirmed through law enforcement databases that the firearm was in fact a PBSO issued duty firearm and had been stolen on November 25, 2025, during a vehicle burglary involving a PBSO deputy's vehicle (PBSO Case#25-119974). Agents learned that a PBSO issued rifle was also stolen during the burglary and was still unaccounted for. S/A DiStefano turned over custody of the firearm to the UC agent for additional lab testing and NIBIN analysis at the PBSO evidence lab.

## CONCLUSION

23. On the basis of the foregoing, your affiant respectfully submits that probable cause exists to charge defendant **OQUENDO** with (1) Title 21 U.S.C. 841 (a)(1) Distribution/Manufacturing/Possession with intent to Distribute (2) Title 18 U.S.C. 924(c)

Use/Carry/ Possess a Firearm During and In Relation to a Drug Trafficking Offense or Crime of Violence and (3) Title 21 U.S.C. 843 Unlawful Use of a Two Way Communication Facility.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

*Brittany DiStefano*
_____
Special Agent Brittany DiStefano
Bureau of Alcohol, Tobacco, Firearms and Explosives

ATTESTED TO ME TELEPHONICALLY (VIA FACETIME) BY THE APPLICANT IN ACCORDANCE WITH THE REQUIREMENTS OF FED. R. CRIM. P. 4.1 THIS _____ DAY OF DECEMBER, 2025.

*Bruce Reinhart*
Digitally signed by Bruce Reinhart
Date: 2025.12.15 14:49:14 -05'00'
_____
**UNITED STATES MAGISTRATE JUDGE**